# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BETTY ANN LEFEVRE, | : | CASE NO. 3:12-cv-00787-GBC |
| | : | |
| Plaintiff, | : | (MAGISTRATE JUDGE COHN) |
| | : | |
| v. | : | MEMORANDUM TO DENY PLAINTIFF'S |
| | : | APPEAL |
| CAROLYN W. COLVIN, | : | |
| ACTING COMMISSIONER OF | : | Docs. 8,10,11 |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM TO DENY PLAINTIFF'S APPEAL

### I. Procedural History

On April 20, 2010, Betty Ann LeFevre ("Plaintiff") protectively filed an application for Title II Social Security Disability benefits ("DIB"), with an onset date of April 12, 2010. (Tr. 59).

This application was denied, and on September 8, 2011, a hearing was held before an Administrative Law Judge ("ALJ"), where Plaintiff was represented by counsel. (Tr. 59). Plaintiff and a vocational expert testified. On September 22, 2011, the ALJ issued a decision finding that Plaintiff was not entitled to DIB because Plaintiff could perform light work (treated as sedentary)

as defined in 20 C.F.R. § 404.1567(a) (Tr. 62). On March 22, 2012, the Appeals Council denied

Plaintiff's request for review, thereby affirming the decision of the ALJ as the "final decision" of the

Commissioner. (Tr. 1-5).

On April 26, 2012, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g),

to appeal a decision of the Commissioner of the Social Security Administration denying social

security benefits. Doc. 1.

On June 26, 2012, Commissioner filed an answer and administrative transcript of

proceedings. Docs. 7,8. On August 7, 2012, and September 10, 2012, the parties filed briefs in

support. Docs. 10,11. On April 29, 2014, the Court referred this case to the undersigned Magistrate

Judge. On May 21, 2014, the parties consented to Magistrate Judge jurisdiction. Doc. 13.

## II.    Standard of Review

When reviewing the denial of disability benefits, we must determine whether the denial is

supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Johnson

v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not

mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 564

(1988); Hartranft v. Apfel, 181 F.3d 358, 360. (3d Cir. 1999); Johnson, 529 F.3d at 200.

This is a deferential standard of review. See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir.

2004). Substantial evidence is satisfied without a large quantity of evidence; it requires only "more

than a mere scintilla" of evidence. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). It may be

less than a preponderance. Jones, 364 F.3d at 503. Thus, if a reasonable mind might accept the

relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then

the Acting Commissioner's determination is supported by substantial evidence and stands. <u>Monsour</u> <u>Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190 (3d Cir. 1986).

To receive disability or supplemental security benefits, Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).

Moreover, the Act requires further that a claimant for disability benefits must show that he has a physical or mental impairment of such a severity that: "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

### III. Relevant Facts in the Record

### A. Background

At all times relevant to this claim Plaintiff was a "younger person" as defined by the Act (Tr. 15). 20 C.F.R. §404.1563(c). Younger individuals can more readily adjust to other work. <u>Id.</u> Plaintiff has past relevant work as a school bus driver, classified as a medium, semi-skilled job. (Tr. 65). Plaintiff's alleged onset date of April 12, 2010, coincides with her hospitalization for vertigo (Tr. 111, 139-47).

On June 2, 2010, Plaintiff completed a Function Report (Tr. 120-27). Plaintiff indicated that

she cares for her personal needs, performs household chores such as cleaning and laundry, prepares meals, shops for groceries and household goods, drives, and handles her own finances (Tr. 120-23). She indicated that she can walkabout two blocks before needing to stop and take a rest; she is capable of finishing what she starts; and she does not require an assistive device (Tr. 126).

At the administrative hearing held on September 8, 2011, Plaintiff testified that she lives with her husband and adult children (Tr. 29-30). She drives her mother and sister to their doctors' appointments (Tr. 30). She cleans her house, including vacuuming, does the laundry, and makes simple meals (Tr. 40). She uses a stationary bike three times a week, goes shopping, and visits with friends every two weeks (Tr.41-42).

## B. Relevant Medical Evidence

Beginning in March 2010, Plaintiff received treatment with Franklin Gergits, D.O., for ear pain and hearing loss (Tr. 148-69, 288-311). A March 26, 2010, sinus CT showed very subtle chronic findings, but no gross abnormalities (Tr. 138). In April 2010, Plaintiff had a one-day hospital admission for vertigo (Tr. 139-47). She was discharged completely symptom-free (Tr. 139).
A May 10, 2010 audiogram revealed a mild low frequency, and moderate sensorineural hearing loss (Tr. 149). On examination on December 6, 2010, Plaintiff's right and left tympanic membranes were intact with good range of motion to pneumotoscopy (Tr. 296). An examination post-myringotomy tube insertion in January 2011, showed that the tubes were patent, and the canals were free of cerumen (Tr. 289). On February 21, 2011, Dr. Gergits recommended a hearing aid, but Plaintiff was not interested at that time (Tr. 289).

Mark A. Blakeslee, D.O., evaluated Plaintiff for complaints of recurrent headaches and intermittent episodes of vertigo and dizziness (Tr. 283-84). Plaintiff told Dr. Blakeslee that she had

one migraine a month (Tr. 280). Dr. Blakeslee's impression was probable migraine headaches, as well as the combination of frequent non-migraneous headaches or chronic tension-type headaches (Tr. 281). He explained that some component of Plaintiff's vertigo could be a component of migraine (Tr. 281). He also believed that a component of Plaintiff's vertigo could be related to her chronic sinusitis and inner ear problems and fluid (Tr. 281). Dr. Blakeslee started Plaintiff on Amtriptyline medication, which improved Plaintiff's sleep (Tr. 282). Plaintiff reported she was still awakening at times during the night with headaches, but Dr. Blakeslee believed that Plaintiff was experiencing rebound headaches due to her daily use of over-the-counter migraine medication (Tr. 279). He advised Plaintiff to decrease her use of the medication.

Plaintiff received treatment at Susquehanna Valley Medical Specialties for right shoulder and right hip pain (Tr. 312-13). Examinations revealed full range of motion of the right shoulder with pain and limping due to the right hip (Tr. 319-24). Mark Williams, D.O., diagnosed impingement syndrome of the right shoulder, mild degenerative joint disease, and trochanteric bursitis of the right hip, which he treated with injections (Tr. 319-24). On January 28, 2011, Plaintiff underwent excision of the trochanteric bursa of the right hip (Tr. 286-87). Six weeks after surgery, Plaintiff was ambulating with an assistive device, with only a slight antalgic gait (Tr. 317).

She stated that she was still having some pain, but it was "much better" than before surgery (Tr. 317).

On March 22, 2011, Lisa Mucciolo, M.D., evaluated Plaintiff for complaints of pain in her elbows, wrists, feet, and hands (Tr. 315-16). On examination, Plaintiff had fourteen out of eighteen tender points, decreased range of motion and tenderness in her wrists, and tenderness in the metacarpophalangeal joints and proximal interphalanagel joints (Tr. 515). On April 7, 2011, Dr.

Mucciolo diagnosed Plaintiff with fibromyalgia and Sjogren's syndrome (Tr. 314).

After reviewing the evidence of record, Anne C. Zaydon, M.D., a state agency physician, assessed Plaintiff's work-related abilities (Tr. 250-55). Dr. Zaydon opined that Plaintiff had the residual functional capacity (RFC) for light work (Tr. 250-55).

### C. Plaintiff's Testimony

At the administrative hearing held on September 8, 2011, Plaintiff testified that she lives with her husband and adult children (Tr. 29-30). She testified that she has been "pretty good" and has not had an episode of vertigo since she had tubes inserted in her ears (Tr. 33). She testified she had problems with hearing, but was able to answer all the questions posed to her at the administrative hearing (Tr. 26-47). She testified her migraines were better (Tr. 34). As for her activities of daily living, Plaintiff testified she cleans her house, including vacuuming, does the laundry, prepares simple meals, and shops (Tr. 40-41). She exercises on a stationary bike three times a week (Tr. 41). She drives her mother and sister to their doctors' appointments and visits with friends every two weeks (Tr. 30, 42).

### IV.    Review of ALJ Decision

A five-step evaluation process is used to determine if a person is eligible for disability benefits. See 20 C.F.R. §§ 404.1520, 416.920; see also Plummer, 186 F.3d at 428. If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment

prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that she is unable to engage in past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the plaintiff. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

### A.     Plaintiff Allegations of Error

### 1.    Whether ALJ Decision was an Error of Law and Supported by Substantial Evidence

### a.    The ALJ Found Plaintiff Did Not Meet the Criteria for a Listed Impairment

Plaintiff contends the ALJ erred by failing to find that Plaintiff met the requirements for listings 1.02 and 14.09. (Pl.'s Br. at 7-10).

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

The ALJ reviewed the record to determine whether Plaintiff met the requirements of a listing.

### (1) ALJ Review and Findings

"The claimant has the following severe impairments: obesity, a mixed conductive / sensorineural hearing loss, trochanteric bursa of the right hip, status post excision, Sjogren's

syndrome and fibromyalgia, diagnosed in April 2011. 20 C.F.R. § 404.1520(c)." (Tr. 61).

"The claimant also has the following non-severe impairments: vertigo / eustachian tube dysfunction, <u>degenerative joint disease of the bilateral hips</u>, right shoulder impingement syndrome, sleep apnea, allergy and atopic disease, hypertension, headaches, anxiety and depression. <u>These impairments do not cause any significant work-related functional limitations. As such, they are non-severe impairments</u>." (Tr. 61) (emphasis added).

"<u>The [ALJ] notes that the claimant's alleged onset date, April 12, 2010 coincides with her admission to the hospital for vertigo. The claimant continued with treatment for these symptoms which prevented her from returning to work as a school bus driver</u>. The claimant underwent bilateral myringotomy with tube insertion on January 18, 2011. She testified that the fluid in her ears, and symptoms from the vertigo were resolved upon the tube insertion. <u>Although these impairments caused significant limitations, these limitations did not exceed 12 months, and thus were non-severe</u>." (Tr. 61-62) (emphasis added).

"The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526)." (Tr. 62).

"I have considered the listings, including sections 1.02, 1.04 and 2.00 and [the ALJ] i[s] not persuaded that the claimant meets or equals any of the listings. [The ALJ] find[s] that the claimant's impairments do not satisfy the requisite laboratory, clinical, and / or diagnostic requirements for listing level severity." (Tr. 62).

"Although obesity has been deleted from the listing of impairments (formerly 9.09), obesity is to be considered in assessing the claimant's functional capacity and its affect on the other

impairments (SSR-02-IP). Here, the record reflects that the claimant weighs 220 pounds and stands 5'3" tall; and the claimant describes symptoms reasonably attributable to her obese state. [The ALJ] ha[s] given due consideration to the claimant's obesity in assessing the claimant's residual functional capacity and, in that case, limiting the claimant to the performance of a range light work (treated as sedentary) work." (Tr. 62).

"There is no specific listing in the listed impairments for fibromyalgia, and as such, disability cannot be presumed based solely on that diagnosis. However, [the ALJ] did consider the presence of that impairment, in combination with the claimant's other impairments, at step three of the sequential evaluation process and conclude[s] that the claimant cannot be found disabled based on the medical factors alone." (Tr. 62).

"The claimant stated that her impairments prevent her from working. At the hearing, she testified she has a hearing problem. She has lost 30% hearing in each ear. Her treating physician told her she will need hearing aids in about 2 years. She also suffers from vertigo. She gets earaches. She had tubes in her ears to relieve some of the fluid. Her problems with vertigo improved after the tube insertion. She has migraines. She gets them about 4 times a month. They last for 2-3 days. She has hip problems. She had surgery. She has problems walking. She suffers from sleep apnea. She uses a C-PAP. She testified she recently has been diagnosed with fibromyalgia. She takes a variety of medications for her problems, with little side effects." (Tr. 63).

"The claimant testified to activities of daily living, which are not particularly limiting. She stated she used to clean her house 3 times per week, now she can only do it once a week. She can prepare simple meals. She watches TV but falls asleep. She reads the newspaper. She does some shopping, but leans on the cart while she shops. She has been exercising. She uses a treadmill and

exercise bike three times a week. She tires daily during the day, usually between 12pm and 4pm." (Tr. 63).

"In the Function Report the claimant reported she can care for her personal needs and cares for her family. She reported she cleans and does laundry twice a week. She reported she drove a car and could shop in stores alone about twice weekly. She had no problems with managing her bills. She reported that she would lie down for a nap during the day. She reported she spends time with her children. She needs no reminding to go places, nor does she need anyone to accompany her. She stated she has some problems with stress." (Tr. 64).

"The claimant has a number of medical problems, including obesity, hearing loss, mixed conductive / sensorineural, trochanteric bursa of the right hip, status post excision, and as of April 2011, Sjogren's disease and fibromyalgia. These impairments are severe insofar as they limit the claimant to a range of light work (treated as sedentary) as set forth hereinabove, however, they are not so severe as to be completely disabling. The claimant is capable of doing a range of light work (treated as sedentary) on a sustained and consistent basis despite the limitations arising as a result of her impairments." (Tr. 64).

"Physical examinations by both treating and examining physicians fail to document the objective signs and findings, which corroborate the claimant's degree of capacity." (Tr. 64).

"The claimant treated with Dr. Franklyn Gergits for complaints of ear pain and a hearing loss. A CT of the sinus dated March 26, 2010 revealed very subtle chronic findings but no gross abnormalities. An audiogram on May 10, 2010 revealed a mild low frequency and moderate sensorineural hearing loss. Examination of the ears on December 6, 2010 revealed the right and left tympanic membranes were intact with good range of motion to pneumotoscopy. The examination

post myringotomy tube insertion in January 2011 showed that the tubes were patent, and the canals were free of cerumen. On February 21, 2011, Dr. Gergits recommended a hearing aid, but the claimant was not interested at that time." (Tr. 64).

"The claimant testified that her symptoms of vertigo and fluid in her ears which caused her to stop working was resolved after the tube insertions. With regard to her loss of hearing, the claimant was able to converse at the hearing, and indicated that she watches television, and may need hearing aids in two years." (Tr. 64).

"The claimant also is status-post excision of a trochanteric bursa of the right hip. Treatment records have revealed that the claimant had problems with ambulation. Injections did not provide long-term improvement. She subsequently underwent surgery on January 28,, 2011 for excision of the trochanteric bursa. A subsequent treatment record, 6 weeks post surgery, from Dr. Mark Williamson March 10, 2011 revealed the claimant was ambulating with an assistive device, but only had a slight antalgic gait. The claimant reported that, although she still had some pain, it was much better than before. Rheumatology clinic notes covering the period March 22, 2011 through April 7, 2011 have revealed that the claimant was evaluated for complaints of pain all over, including elbows, wrists and swollen salivary glands. Physical examinations revealed 14 out [of] 18 tender points, a reduced range of motion and tenderness in the metacarpophalangeal joints and proximal interphalangeal joints. Dr. Mucciolo opined the claimant clearly had components consistent with fibromyalgia. In a treatment record dated April 7, 2011, Dr. Mucciolo further diagnosed the claimant with Sjogren's syndrome." (Tr. 64-65).

"The medical evidence of record simply does not support the claimant's alleged incapacity. She is able to care for her personal needs, maintains a household, shops and drives. The medical

evidence of record reveals that the course of treatment pursued by the claimant's physicians have not been consistent with what one would expect if the claimant were truly disabled. Although the claimant has received treatment for her alleged disabling impairments, the treatment has essentially been routine and conservative in nature. In fact, the initial reason for stopping work, i.e. the vertigo has been resolved. The claimant's most recent complaints concerning pain, have just recently been diagnosed and thus, she has received no more than a few months of treatment for the fibromyalgia and Sjogren's syndrome. In addition, none of her treating physicians have opined that the claimant is totally disabled or possessed any significant functional limitations." (Tr. 65) (emphasis added).

The State agency medical consultant opined that the claimant was capable of performing a range of light work. [The ALJ] ha[s] given the claimant every reasonable benefit of the doubt with regard to her subjective complaints, read in conjunction with the objective findings of record and therefore find that the claimant is capable of perform[ing] a range of light work (treated as sedentary)." (Tr. 65).

### (2) Case Law and Analysis for Listed Impairment

Plaintiff contends the ALJ erred by failing to find that Plaintiff met the requirements for listings 1.02 and 14.09. Pl. Br. at 7-10, Doc. 10. However, the ALJ throughly evaluated the hearing testimony; medical history; activities of daily living; opinion evidence; and credibility to determine whether Plaintiff met the criteria for a listed impairment. The record shows Plaintiff is able to ambulate with a cane, which is insufficient to meet listings 1.02 and 14.09.

"Listing 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing,

bony destruction, or ankylosis of the affected joint(s). With: A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), <u>resulting in inability to ambulate effectively, as defined in 1.00B2b</u>; or B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02 (emphasis added).

Section 1.00B2b states:

"What We Mean by Inability to Ambulate Effectively (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a handheld assistive device(s) that limits the functioning of <u>both upper extremities</u>. (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, <u>the inability to walk without the use of</u> a walker, two crutches or <u>two canes</u>, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and <u>the inability to climb a few steps</u> at a reasonable pace with the use of a single hand rail. <u>The inability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation</u>." 20 C.F.R. pt. 404, subpt. P., app. 1, § 1.00B2b (emphasis added).

In <u>Morrison v. Comm'r of Soc. Sec.</u>, 355 F. App'x 599 (3d Cir. 2009), the Court held that

substantial evidence supported the ALJ's finding that the plaintiff's impairment did not result in her inability to ambulate effectively. Id. at 601. The Court noted that the plaintiff did not meet the requirements of § 1.04C because she had a negative straight leg-raising test, normal strength in her lower extremities, and a normal range of motion. Id. at 601. The plaintiff's doctor, noting that the plaintiff walked without an assistive device, also observed that the plaintiff had no atrophy in her lower extremities and no restricted hip rotation. Id. Based on this evidence, the Court affirmed the ALJ's conclusion that the criteria of § 1.04C were not met. Id.

In Bullock v. Comm'r of Soc. Sec., 277 F. App'x 325, 328 (5th Cir. 2007), the Court held that the plaintiff failed to show she was unable to ambulate effectively, as defined in § 1.00B2b, because she was able to walk with the help of a single cane, as opposed to a walker, two crutches or two canes. Furthermore, the plaintiff was able to climb stairs with the use of a handrail and she reported to her doctor that she could walk two blocks at one time. Id. at 328. The Court concluded that the ALJ's decision that she did not meet the requirements of the Listings was supported by substantial evidence. Id.

The evidence does not demonstrate that Plaintiff's degenerative joint disease results in an inability to ambulate effectively. Six weeks after surgery, Plaintiff was ambulating with an assistive device, with only a slight antalgic gait (Tr. 317). Moreover, the record does not demonstrate that Plaintiff did not have the ability to travel without companion assistance to and from a place of employment or school. Also, the record does not demonstrate that Plaintiff had the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at are reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single handle rail. She drives her mother and sister

to their doctors' appointments (Tr. 30). She cleans her house once a week, vacuums, does the laundry, prepares simple meals, and goes grocery shopping (Tr. 41). She also visits with friends every two weeks (Tr. 30, 41-42). Therefore, Plaintiff does not meet listing 1.02.

"Listing 14.09 Inflammatory arthritis. a. General. The spectrum of inflammatory arthritis includes a vast array of disorders that differ in cause, course, and outcome. Clinically, inflammation of major peripheral joints may be the dominant manifestation causing difficulties with ambulation or fine and gross movements; there may be joint pain, swelling, and tenderness. The arthritis may affect other joints, or cause less limitation in ambulation or the performance of fine and gross movements. However, in combination with extra-articular features, including constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss), inflammatory arthritis may result in an extreme limitation. b. Inflammatory arthritis involving the axial spine (spondyloarthropathy). In adults, inflammatory arthritis involving the axial spine may be associated with disorders such as: (i) Reiter's syndrome; (ii) Ankylosing spondylitis; (iii) Psoriatic arthritis; (iv) Whipple's disease; (v) Behçet's disease; and (vi) Inflammatory bowel disease. c. Inflammatory arthritis involving the peripheral joints. In adults, inflammatory arthritis involving peripheral joints may be associated with disorders such as: (i) Rheumatoid arthritis; (ii) Sjögren's syndrome; (iii) Psoriatic arthritis; (iv) Crystal deposition disorders (gout and pseudogout); (v) Lyme disease; and (vi) Inflammatory bowel disease. d. Documentation of inflammatory arthritis. Generally, but not always, the diagnosis of inflammatory arthritis is based on the clinical features and serologic findings described in the most recent edition of the Primer on the Rheumatic Diseases published by the Arthritis Foundation. e. How we evaluate inflammatory arthritis under the listings. (i) Listing-level severity in 14.09A and 14.09C1 is shown by an impairment that results in an "extreme" (very serious) limitation. In 14.09A, the criterion is satisfied with persistent inflammation or deformity in

one major peripheral weight-bearing joint <u>resulting in the inability to ambulate effectively (as</u> <u>defined in 14.00C6) or one major peripheral joint in each upper extremity resulting in the inability</u> <u>to perform fine and gross movements effectively (as defined in 14.00C7)</u>. In 14.09C1, if you have the required ankylosis (fixation) of your cervical or dorsolumbar spine, we will find that you have an extreme limitation in your ability to see in front of you, above you, and to the side. Therefore, inability to ambulate effectively is implicit in 14.09C1, even though you might not require bilateral upper limb assistance. (ii) Listing-level severity is shown in 14.09B, 14.09C2, and 14.09D by inflammatory arthritis that involves various combinations of complications of one or more major peripheral joints or other joints, such as inflammation or deformity, extra-articular features, repeated manifestations, and constitutional symptoms or signs. Extra-articular impairments may also meet listings in other body systems. (iii) Extra-articular features of inflammatory arthritis may involve any body system; for example: Musculoskeletal (heel enthesopathy), ophthalmologic (iridocyclitis, keratoconjunctivitis sicca, uveitis), pulmonary (pleuritis, pulmonary fibrosis or nodules, restrictive lung disease), cardiovascular (aortic valve insufficiency, arrhythmias, coronary arteritis, myocarditis, pericarditis, Raynaud's phenomenon, systemic vasculitis), renal (amyloidosis of the kidney), hematologic (chronic anemia, thrombocytopenia), neurologic (peripheral neuropathy, radiculopathy, spinal cord or cauda equina compression with sensory and motor loss), mental (cognitive dysfunction, poor memory), and immune system (Felty's syndrome (hypersplenism with compromised immune competence)). (iv) If both inflammation and chronic deformities are present, we evaluate your impairment under the criteria of any appropriate listing." 20 C.F.R. pt. 404, subpt. P, app. 1, § 14.09 (emphasis added).

"14.00 Immune System Disorders C. Definitions 6. Inability to ambulate effectively has the same meaning as in 1.00B2b. 7. Inability to perform fine and gross movements effectively has the

same meaning as in 1.00B2c."  20 C.F.R. pt. 404, subpt. P, app. 1, § 14.00C6-7.

Section 1.00B2c states:

"What we mean by inability to perform fine and gross movements effectively. Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, <u>examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level</u>." 20 C.F.R. pt. 404, subpt. P., app. 1, § 1.00B2c (emphasis added).

While the record documents a diagnosis of fibromyalgia, there is no evidence of the inability to ambulate effectively or the inability to perform fine and gross movements effectively. Plaintiff cares for her personal needs (Tr. 121). Plaintiff cleans her house once a week, including vacuuming, does the laundry, grocery shops, prepares simple meals, and exercises on a stationary bike three times a week (Tr. 40-41). She drives her mother and sister to their doctors' appointments and visits with friends every two weeks (Tr. 30, 41-42). Thus, Plaintiff did not establish she met listing 14.09A during the relevant period. Because all the criteria of listing 14.09A have not met, Plaintiff failed to establish that she met the listing.

Plaintiff bears the burden of showing she meets the requirements of Sections 1.02, 14.09, 1.00B2b, and 1.00B2c. 20 C.F.R. § 404.1512(a) (providing that a claimant bears the burden of providing sufficient evidence to establish entitlement to disability); <u>see also Dorf v. Bowen</u>, 794 F.2d

896, 900 (3d Cir. 1986); Brown, 845 F.2d at 1213. Plaintiff has not met the burden and substantial

evidence supports the ALJ's decision that she does not meet the criteria of a listing.

### b. ALJ's Credibility Determination

Plaintiff contends the ALJ erred by discounting her credibility and not properly considering

her testimony. Pl. Br. at 9-11, 14-15, Doc 10.

When evaluating the credibility of an individual's statements, the adjudicator must consider

the entire case record and give specific reasons for the weight given to the individual's statements.

SSR 96–7p, 61 Fed. Reg. 34483 (July 2, 1996). In particular, an ALJ should consider the following

factors: (1) the plaintiff's daily activities; (2) the duration, frequency and intensity of the plaintiff's

symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side

effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication for

relief of the symptoms; (6) any measures the plaintiff uses or has used to relieve the symptoms; (7)

the plaintiff's prior work record; and (8) the plaintiff's demeanor during the hearing. See 20 C.F.R.

§§ 404.1529(c)(3), 416.929(c)(3); Jury v. Colvin, No. 3:12-cv-2002, 2014 WL 1028439 (M.D. Pa.

Mar. 14, 2014). When the Court reviews  the ALJ's decision, "an ALJ's findings based on the

credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ

is charged with the duty of observing a witness's demeanor and credibility." Walters v.

Commissioner of Soc. Sec., 127 F.3d 525, 531 (6th Cir.1997) (citing Casias v. Secretary of Health

& Human Servs., 933 F.2d 799, 801 (10th Cir.1991) ("We defer to the ALJ as trier of fact, the

individual optimally positioned to observe and assess witness credibility.")). Furthermore, in

determining if the ALJ's decision is supported by substantial evidence the court may not parse the

record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir.

1981).

The ALJ reviewed the record and found Plaintiff's testimony that her impairments prevent her from working differed from the evidence in record. (Tr. 63). Plaintiff testified to activities of daily living, which the ALJ found not particularly limiting. She cleans her house once a week, prepares simple meals, watches TV, reads the newspaper, does some shopping, and exercises using a treadmill and exercise bike three times a week. (Tr. 63).

The ALJ noted that in the Function Report, Plaintiff reported she can care for her personal needs and her family. She cleans, does laundry twice a week, drives a car, and shops in stores alone about twice weekly. She had no problems with managing her bills. She spends time with her children, needs no reminding to go places, nor does she need anyone to accompany her. (Tr. 64).

The ALJ reviewed the medical evidence and found that physical examinations by both treating and examining physicians failed to document the objective signs and findings, which corroborate the claimant's degree of capacity. (Tr. 64).

The ALJ stated Plaintiff testified that her symptoms of vertigo and fluid in her ears which caused her to stop working was resolved after the tube insertions. (Tr. 64).

The ALJ noted that a subsequent treatment record, 6 weeks post surgery, revealed Plaintiff ambulated with an assistive device, but only had a slight antalgic gait. Plaintiff reported that although she still had some pain, it was much better than before. (Tr. 64-65).

The ALJ concluded the medical evidence of record simply does not support Plaintiff's alleged incapacity. She is able to care for her personal needs, maintains a household, shops, and drives. The course of treatment pursued by Plaintiff's physicians has not been consistent with what one would expect if Plaintiff were truly disabled. Although Plaintiff has received treatment for her alleged disabling impairments, the treatment has essentially been routine and conservative in nature. In fact, the initial reason for stopping work, i.e., the vertigo, has been resolved. Plaintiff's most

recent complaints concerning pain have just recently been diagnosed and thus, she has received no more than a few months of treatment for the fibromyalgia and Sjogren's syndrome. In addition, none of her treating physicians have opined Plaintiff is totally disabled or possessed any significant functional limitations. (Tr. 65)

The ALJ further noted the State agency medical consultant opined Plaintiff was capable of performing a range of light work. The ALJ gave Plaintiff every reasonable benefit of the doubt with regard to her subjective complaints, read in conjunction with the objective findings of record and found Plaintiff capable of performing a range of light work (treated as sedentary). (Tr. 65).

Plaintiff contends the ALJ did not consider Plaintiff's vertigo, migraines, and medications. Pl. Br. at 11-12, Doc 10. However, the ALJ's decision specifically mentions Plaintiff's allegations concerning vertigo, migraines, and medications. (Tr. 63).

Plaintiff states the ALJ erred by discounting Plaintiff's fibromyalgia and Sjogren's Syndrome since she has only required a few months of treatment. Pl. Br. at 10, Doc 10. However, the regulations require the ALJ to find that the disability is expected to last continuously for a year. To receive disability or supplemental security benefits, Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A) (emphasis added). Thus, Plaintiff's impairments must also meet the durational requirement.

### c. ALJ Review of Medical Evidence

Plaintiff contends the ALJ erred in evaluating the medical evidence in the record. Pl. Br. at 8-9, 11, 13-15, Doc 10.

The weight afforded to any medical opinion is dependent on a variety of factors, including the degree to which the opinion is supported by relevant evidence and consistent with the record as a whole. 20 C.F.R. § 404.1527(c)(3)-(4). Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion. 20 C.F.R. § 404.1527(c)(4). A treating physician's opinion does not warrant controlling weight under the regulations unless it is well supported by clinical and laboratory diagnostic findings and consistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); Plummer, 186 F.3d at 429. If a treating source's opinion is not entitled to controlling weight, the factors outlined in 20 C.F.R. § 404.1527(c)(2) are used to determine the weight to give the opinion. Id. The more a treating source presents medical signs and laboratory findings to support his medical opinion, the more weight it is entitled. Id. Likewise, the more consistent a treating physician's opinion is with the record as a whole, the more weight it should be afforded. Id. The Commissioner is not bound by a treating physician's opinion, and may reject it, if there is a lack of clinical data supporting it, or if there is contrary medical evidence. Lyons-Timmons v. Barnhart, 147 F. App'x 313, 316 (3d Cir. 2005).

The ALJ, not the treating or examining physician, must make the disability and residual functional capacity determination. 20 C.F.R. § 404.1527(d)(1)-(2); Chandler v. Comm'r of Soc. Sec., 667 F.3d 356 (3d Cir. 2011). "The law is clear that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Chandler, 667 F.3d at 361; Coleman v. Astrue, 2012 WL 3835403, at *2 (3d Cir. Sept. 5, 2012) (holding that ALJ may choose non-examining physician opinion over treating physician opinion as long as medical evidence not rejected for wrong reason or no reason).

The case law in this circuit makes clear that physician opinions are not binding upon an ALJ, and that an ALJ is free to reject a medical source's conclusions. Chandler, 667 F.3d 356 at 361. In

so doing, however, the ALJ must indicate why evidence was rejected, so that a reviewing court can determine whether "significant probative evidence was not credited or simply ignored." <u>Cotter v. Harris</u>, 642 F.2d 700, 705 (3d Cir.1981). <u>Mistick v. Colvin</u>, No. 12-cv-1031, 2013 WL 5288261 (W.D. Pa. Sept. 18, 2013).

In <u>Chandler v. Comm'r of Soc. Sec.</u>, 667 F.3d at 362, the Third Circuit held that the district court had erred in concluding that the "ALJ had reached its decision based on its own improper lay opinion regarding medical evidence." <u>Id.</u> "The ALJ– not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." <u>Id.</u> at 361 (citing 20 C.F.R. 404.1527(e)(1), 404.1546(c)).

"[T]he ALJ is not bound to accept every limitation that is found by a medical professional, but rather only the ones that she finds are credibly established by the record. <u>See Salles v. Comm'r of Soc. Sec.</u>, 229 Fed. Appx. 140, 147 (3d Cir. 2007). Contrary to Plaintiff's assertion, the ALJ did not err by incorporating into her RFC finding only those limitations which she found to be credibly established by the objective medical evidence and the Court finds that the ALJ's RFC determination as well as her ensuing hypothetical to the vocational expert both enjoy the support of substantial record evidence. Finally, the Court finds that the ALJ evaluated the medical opinion evidence properly and in accordance with the applicable rules and regulations and that substantial record evidence supports her evaluation. The ALJ gave a detailed explanation for why the medical source statements from the mental health providers were not given controlling weight the ALJ discussed at length her justification for why the medical source statements from Dr. Jahangeer and Ms. Walker were inconsistent with and contradicted by the other medical evidence of record, including their own notes and prior findings. The Court finds that the ALJ discharged her duty because she (i) demonstrated her consideration of all the relevant medical evidence, (ii) addressed the contradictory

evidence in the record which conflicted with her findings, and (iii) explained why that contrary evidence was rejected or not given controlling weight. See Cotter, 642 F.2d at 705. Indeed, the overarching theme of the ALJ's decision was the complete lack of objective medical evidence which corroborated or even tended to support Plaintiff's complaints of severely disabling impairments and the Court agrees with the ALJ's finding that such corroborating evidence was woefully lacking in the record. Plaintiff's subjective complaints were corroborated only by her own self-reports, which—for the reasons discussed by the ALJ—were not particularly credible. To that end, the Court finds that the ALJ's credibility determination is well-supported by the record and that Plaintiff's arguments to the contrary are completely unpersuasive, particularly given the minimal treatment record, the inconsistencies in the record that were highlighted and discussed by the ALJ . . . Accordingly, the Court concludes that substantial record evidence supports the ALJ's determination of non-disability." Stewart v. Astrue, No. 13–73, 2014 WL 29035, at *1, n.1 (W.D. Pa. Jan. 2, 2014).

Similarly in this case, the record does not support Plaintiff's assertions of disabling severity. Plaintiff's contentions of error are inconsistent with the objective evidence and activities of daily living. From the ALJ's extensive review, substantial evidence supports the weight accorded to the allegations and opinions of record.

Therefore, the ALJ's finding that Plaintiff's impairments did not rise to the level of total disability was supported by substantial evidence.

### d. The ALJ Determined Plaintiff Could Perform Light Work (Treated as Sedentary)

Plaintiff contends the ALJ erred in finding Plaintiff's residual functional capacity by determining Plaintiff could perform light work (treated as sedentary). Pl. Br. at 11, 13, Doc. 10. The ALJ evaluated the record before determining Plaintiff's residual functional capacity.

"After careful consideration of the entire record, the [ALJ] find[s] that the claimant has the

residual functional capacity to perform light (treated as sedentary) work as defined in 20 C.F.R. § 404.1567(a). She would be limited to two hours of standing and walking throughout the workday. She would be required to walk on even ground. She would be limited to occasional pushing and pulling with the lower extremity, occasional stooping. She would be limited to no kneeling. She should avoid concentrated exposure to noise, but can hear at normal conversation. The work should not involve trying to communicate with someone while there are others in the room also communicating to others." (Tr. 63).

Contrary to Plaintiff's argument, the ALJ gave Plaintiff every reasonable benefit of the doubt with regard to her subjective complaints, in conjunction with the objective findings of record (Tr. 65). The ALJ gave Plaintiff even greater limitations than assessed by Dr. Zaydon (Tr. 65, 250-55). Considering Plaintiff's recent hip surgery, obesity, Sjogren's disease and fibromyalgia, the ALJ reduced Plaintiff's standing and walking to two hours in an eight-hour workday (Tr. 62, 64). She would be required to walk on even ground (Tr. 62). She would be limited to occasional pushing and pulling with the lower extremity and occasional stooping (Tr. 62). She would be limited to no kneeling (Tr. 62). The ALJ further accounted for Plaintiff's mixed conductive / sensorineural hearing loss by finding that Plaintiff should avoid concentrated exposure to noise, and work that did not require her to communicate with someone while there are others in the room also communicating with others (Tr. 63).

In limiting Plaintiff to a reduced range of light work (treated as sedentary), the RFC accounted for Plaintiff's credibly established limitations.

Plaintiff states the ALJ ignored the Vocational Expert testimony that all of Plaintiff's alleged limitations would erode the job base such that Plaintiff would not be able to perform any work. Pl. Br. at 12, Doc. 10. However, since substantial evidence supports the ALJ's finding that Plaintiff

could perform a limited range of light work (treated as sedentary), this hypothetical question to the VE would not apply.

The VE determined that an individual with the Plaintiff's age, education, work experience, and RFC could perform light work (treated as sedentary) existing in significant numbers in the national economy and, thus, the ALJ found that Plaintiff was not disabled (Tr. 66).

Thus, the ALJ's RFC finding includes only "credibly established limitations" and not all impairments alleged by claimant, Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005). Accordingly, the ALJ relied on the record and testimony in determining Plaintiff's residual functional capacity, and the findings are supported by substantial evidence.

## V.    Conclusion

Therefore, the Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1382c; Brown, 845 F.2d at 1213; Johnson, 529 F.3d at 200; Pierce, 487 U.S. at 552; Hartranft, 181 F.3d at 360; Plummer, 186 F.3d at 427; Jones, 364 F.3d at 503.

Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla of evidence. It does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971).

Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. Monsour Med. Ctr., 806 F.2d at 1190. Here, a reasonable mind might accept the evidence as adequate, and the Court will affirm the decision of the

Commissioner pursuant to 42 U.S.C. § 405(g).

An appropriate order in accordance with this memorandum to deny Plaintiff's appeal will follow.


Dated: August 29, 2014                                     s/Gerald B. Cohn
                                               GERALD B. COHN
                                               UNITED STATES MAGISTRATE JUDGE